A-580-881
Remand
Slip Op. 21-47
POR: 3/7/2016 to 8/31/2017
**Public Version**
E&C/OVI: MJH

*Hyundai Steel Co. et al. v. United States*,
**Court No. 19-00099, Slip. Op. 21-47 (CIT April 27, 2021)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.    SUMMARY

The Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or

the Court) in *Hyundai Steel Co. et al. v. United States*, Court No. 19-00099, Slip. Op. 21-47

(April 27, 2021) (*Remand Order*).  These final results of redetermination concern *Certain Cold-

Rolled Steel Flat Products from the Republic of Korea:  Final Results of Antidumping Duty

Administrative Review; 2016-2017*, 84 FR 24083 (May 24, 2019) (*Final Results*) and

accompanying Issues and Decision Memorandum (IDM).  This review of the antidumping duty

order on cold-rolled steel flat products from Korea covers the period March 7, 2016, through

August 31, 2017.[1]

As set forth in detail below, pursuant to the Court's *Remand Order*, Commerce has

accepted the control number reporting employed by Hyundai Steel Company (Hyundai Steel)

and is no longer relying on facts available with or without an adverse inference (AFA) for

transactions for which we had initially assigned AFA.  Additionally, we have rescinded the

review with respect to a company to which Commerce initially assigned the rate applied to

---

[1] *See Final Results*.

non-selected, "all-other" respondents.  On August 13, 2021, we released our Draft Results of

Redetermination to interested parties.[2]  On August 23, 2021, United States Steel Corporation

(U.S. Steel) and Hyundai Steel provided comments.[3]  We respond to these comments below.

After considering these comments, for purposes of these final results of redetermination, we

have made no changes to the analysis presented in our Draft Results of Redetermination.

## II.    BACKGROUND

### A.  Hyundai Steel Product Specifications

In the underlying review, Commerce requested that Hyundai Steel report its "product

codes" (PRODCODH/U) for products sold in the home market and United States in section B

and C of its Antidumping Questionnaire, respectively.[4]  A product code is the internal code that

Hyundai Steel assigns to products in the ordinary course of its business.[5]  PRODCODH/U also

contains several subfields for characteristics of Hyundai Steel's internal product code, including

a sub-field for specification (PRODCOD2H/U).[6]  At the same time, Commerce also requested

that Hyundai Steel report specification data (SPECGRADEH/U) for products sold in the home

market and the United States, in section B and C of its Antidumping Questionnaire,

respectively.[7]  Specification refers to the type or grade of steel in a product, according to

---

[2] See "*Hyundai Steel Co. et al. v. United States*, Court No. 19-00099, Slip Op. 21-47 (CIT April 27, 2021):  Draft Results of Redetermination Pursuant to Court Remand," dated August 13, 2021 (Draft Results of Redetermination).
[3] See U.S. Steel's Letter, "Certain Cold-Rolled Steel Flat Products from the Republic of Korea:  Comments of U.S. Steel Concerning the Department of Commerce's Draft Results of Redetermination Pursuant to Court Remand – *Hyundai Steel Co., et al. v. United States*, Slip. Op. 21-47, Court No. 19-00099," dated August 23, 2021 (U.S. Steel Draft Comments); *see also* Hyundai Steel's Letter, "Certain Cold Rolled Steel Flat Products from Korea, Remand from Hyundai Steel Co et al. v. United States (Court No. 19-00099, Slip Op. 21-47):  Hyundai Steel Company's Draft Remand Redetermination Comments," dated August 23, 2021 (Hyundai Steel Draft Comments).
[4] See Commerce's Letter, Initial Antidumping Questionnaire, dated February 8, 2018 at B-3 to B-32 and B-33 to C-30 (Antidumping Questionnaire).
[5] *Id.* at B-7 and B-38.
[6] See Hyundai Steel's Letter, "Cold-Rolled Steel Flat Products from the Republic of Korea:  Hyundai Steel Company's Initial Sections B-E Response," dated March 30, 2018 (Hyundai Steel March 30, 2018 Section B, C and E Response) at B-8 to B-9 and C-10 to C-11.
[7] *See* Antidumping Questionnaire at B-8 and B-39.

international standards, including those set by ASTM International, a testing and standards

organization, for example standard ASTM A1008, designation HSLAS, grade 45 (310) Class 1.[8]

While Commerce does not rely on Hyundai Steel's internal product codes and product

specifications data fields to formulate control numbers, Hyundai Steel's internal product codes

and product specifications relate to the type or grade of steel utilized by Hyundai Steel in the

production and sale of the subject merchandise, and these product characteristics are coded into

control numbers (CONNUMs).  To create product specific codes utilized in its sales and cost

analysis, Commerce constructs CONNUMs which represent a unique set of product

characteristics.  Commerce relies on these CONNUMs to conduct its sales and cost analyses.

Following Hyundai Steel's submission of its responses to Commerce's initial

antidumping questionnaire, Commerce issued Hyundai Steel a supplemental questionnaire,

instructing Hyundai Steel to "ensure that {it} accurately reported all product specifications in

{its} sales and cost reporting…"[9]  Hyundai Steel stated that it "accurately" reported "all product

specifications in the sales and cost databases."[10]  Commerce requested the data set forth in its

June 18, 2018, supplemental questionnaire in order to establish that the control numbers for the

home market (CONNUMH) and United States market (CONNUMU), which Commerce

subsequently utilizes in its sales and cost analysis, were consistent with Hyundai Steel's internal

sales and cost records.[11]  Based on Hyundai Steel's questionnaire and supplemental

---

[8] *Id.* at B-11.

[9] *See* Commerce's Letter, "Antidumping Duty Administrative Review of Cold-Rolled Steel Flat Products from Korea:  First Supplemental Questionnaire for Sections A, B, C, D & E," dated June 18, 2018 (June 18, 2018 Supplemental) at 6.

[10] *See* Hyundai Steel's Letter, "Cold Rolled Steel Flat Products from the Republic of Korea: Response to the Department's June 18, 2018 Supplemental Questionnaire," dated July 11, 2018 (Hyundai Steel Supplemental B-E Questionnaire Response) at 12.

[11] *See* June 18, 2018 Supplemental at 5-6.

questionnaire responses,[12] Commerce identified discrepancies between the product code and specification reported for certain sales.[13]  As a result, Commerce found that Hyundai Steel had provided inconsistent product specification data for observations of certain U.S. sales within a number, [   ], of control numbers.[14]  Because of the conflicting product specification information, Commerce also found that it could not confirm that Hyundai Steel accurately reported control number fields for the sales in question and other sales of the same control number; as a result, Commerce was unable to match the affected U.S. sale control numbers to the appropriate control numbers in the Korean, home market.[15]  Accordingly, in the preliminary and final results, Commerce relied on facts available with an adverse inference by applying the highest transaction-specific margin to the inconsistent sales observations of the affected control numbers created by Hyundai Steel.[16]

In the *Remand Order*, the Court remanded Commerce's reliance on facts available for U.S sales of the [   ] control numbers in question.[17]  The Court held that the relevant statement in Commerce's June 18, 2018, supplemental questionnaire was "broadly drawn" and did not satisfy the notice requirement under section 782(d) of the Tariff Act of 1930, as amended (the Act), because Commerce "failed to identify the nature of the alleged 'deficiency' in Hyundai Steel's response with any specificity."[18]  Further the Court explained that the word "accuracy" in the supplemental questionnaire did not alert Hyundai Steel that its specification data were

---

[12] *See* Hyundai Steel March 30, 2018 Section B, C and E Response; *see also* Hyundai Steel Supplemental B-E Questionnaire Response.
[13] *See Final Results* IDM at Comment 2.
[14] *See* Memorandum, "Analysis for the Preliminary Results of the Antidumping Duty Administrative Review Certain Cold Rolled Steel Flat Products from the Republic of Korea:  Hyundai Steel Company," dated October 3, 2018 (Hyundai Steel Preliminary Analysis Memorandum) at 5-6.
[15] *See Final Results* IDM at Comment 2.
[16] *Id*; *see also* Hyundai Steel Preliminary Analysis Memorandum at 5-6.
[17] *See Remand Order* at 24-31, 38-39.
[18] *Id.* at 27.

deficient.[19]  The Court also rejected the argument that Commerce's reliance on facts available in the immediately preceding investigation justified its use of facts available in the instant review.[20] Therefore, the Court ordered Commerce to identify the sales and control numbers containing a discrepancy between the product code and specification, to clearly describe the nature of the deficiency, to provide Hyundai Steel with an opportunity to remedy the deficiency, and to reconsider whether facts available is warranted.[21]

Based on the Court's *Remand Order*, on June 2, 2021, we issued a supplemental questionnaire concerning Hyundai's U.S. sales of the [  ] control numbers in question.[22]  On June 16, 2021, Hyundai Steel filed its response to our supplemental questionnaire.[23]  On, June 21, 2021, United States Steel Corporation (U.S. Steel), a domestic interested party, submitted comments concerning the Hyundai Steel Remand Supplemental Response.[24]  On June 25, 2021, Hyundai Steel submitted reply comments to U.S. Steel's Remand Rebuttal Comments.[25]  Commerce met with both parties upon their request, regarding the remand proceedings.[26]

---

[19] *Id.* at 28.
[20] *Id.* 28-29 (citing *Hyundai Steel Co. v. United States*, 319 F. Supp. 3d 1327 (CIT 2018); and *Hyundai Steel Co. v. United States*, 365 F. Supp. 3d 1294 (CIT 2019)).
[21] *Id.* at 29-30, 38-39.
[22] *See* Commerce's Letter, "Request for Additional Information:  Hyundai Steel v. United States Slip Op. 21-47, Court No 19-00099," dated June 2, 2021 (Remand Supplemental Questionnaire).
[23] *See* Hyundai Steel's Letter, "Remand Order of the United States Court of International Trade in Hyundai Steel Co. et al. v. United States (Court No. 19-00099):  Hyundai Steel Company's Supplemental Questionnaire Response," dated June 16, 2021 (Hyundai Steel Remand Supplemental Response).
[24] *See* U.S. Steel's Letter, "Certain Cold Rolled Steel Flat Products from the Republic of Korea:  Comments of U.S. Steel Concerning Hyundai Steel's Response to Commerce's June 2, 2021 Request for Additional Information— Hyundai Steel v. United States, Slip. Op. 21-47, Court No. 19-00099," dated June 22, 2021 (U.S. Steel's Remand Rebuttal Comments).
[25] *See* Hyundai Steel's Letter, "Remand Order of the United States Court of International Trade in Hyundai Steel Co. et al. v. United States (Court No. 19-00099):  Hyundai Steel Company's Response to Petitioner's Comments," dated June 25, 2021 (Hyundai Steel Remand Reply Comments).
[26] *See* Memorandum, "Cold-Rolled Steel from Korea:  Meeting with Counsel for U.S. Steel – Hyundai Steel v. United States, Slip Op. 21-47, Court No. 19-00099," dated June 10, 2021; *see also* Memorandum, "Cold Rolled Steel from Korea:  Ex Parte Meeting with Counsel for Hyundai Steel—Hyundai Steel v. United States Slip Op. 21-47, Court No. 19-00099," dated July 2, 2021.

B.  Assignment of Rate to Company A[27]

In the underlying administrative review, the petitioners[28] requested a review of 16

companies, including Company A, an affiliate of Hyundai Steel.[29]  Although the petitioners filed a

timely withdrawal of their review request for certain companies, the petitioners did not include

Company A in their withdrawal request.[30]  In the *Preliminary Results*, Commerce assigned the all-

others rate to Company A.[31]  Subsequently, in a case brief, U.S. Steel for the first time requested

that Commerce either rescind its review of Company A or collapse Company A with Hyundai

Steel.[32]  The petitioners' request to withdraw the review for Company A was filed after the 90-day

deadline established in 19 CFR 351.213(d)(1).  In the *Final Results*, Commerce continued to apply

the all-others rate to Company A, declining to rescind its review or to collapse the company with

Hyundai Steel.[33]  Commerce did, however, determine that Company A was neither a producer nor

an exporter of subject merchandise.[34]

In the *Remand Order*, the Court sustained Commerce's determination that the petitioners'

request to rescind review of Company A was untimely.[35]  The Court held that U.S. Steel failed

to request an extension and did not satisfy the prerequisites for asking that Commerce rescind its

---

[27] The identity of [                    ] is Business Proprietary Information.  Therefore, in the Remand Order, the Court refers to [                    ] as "Company A."  *See Remand Order* at 4 n.5.
[28] The petitioners in this proceeding are ArcelorMittal USA LLC; AK Steel Corporation; Nucor Corporation; Steel Dynamics, Inc.; and U.S. Steel (collectively, petitioners).
[29] *See* Petitioners' Letter, "Cold-Rolled Steel Flat Products from the Republic of Korea – Petitioners' Request for Administrative Review," dated October 2, 2017.
[30] *See* Petitioners' Letter, "Cold-Rolled Steel Flat Products from the Republic of Korea—Petitioners' Partial Withdrawal of Administrative Review Request," dated February 14, 2018.
[31] *See Certain Cold Rolled Steel Flat Products from the Republic of Korea:  Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission of Review; 2016-2017*, 83 FR 51661 (October 12, 2018) (*Preliminary Results*).
[32] *See* Petitioners' Letter, "Case Brief of United States Steel Corporation, ArcelorMittal USA, Nucor Corporation, and AK Steel Corporation," dated November 20, 2018 at 2-7.
[33] *See Final Results* IDM at Comment 8.
[34] *Id*.
[35] *See Remand Order* at 35-36.

review.[36]  Nevertheless, the Court concluded that "assigning the" rate for all other non-selected respondents "to a non-producer or exporter violated the {Act}."[37]  Specifically, although the petitioners had earlier identified Company A as an exporter or producer of subject merchandise, once Commerce determined that Company A was neither, the Court explained that Commerce "need not have waited for U.S. Steel to ask for rescission to find that it could not determine a rate for Company A."[38]  The Court further determined that the Act "does not empower Commerce to assign a rate to a freight company."[39]  Thus, the Court determined that U.S. Steel's untimely rescission request was not consequential.  Based on the foregoing, the Court directed Commerce to rescind the review with respect to Company A.[40]

On July 13, 2021, the Court granted Commerce a 60-day extension, to September 24, 2021, to file its redetermination.[41]  On August 13, 2021, we released our Draft Results of Redetermination to interested parties.[42]   On August 23, 2021, U.S. Steel and Hyundai Steel provided comments.[43]  Pursuant to the *Remand Order*, we address below: (1) removal of facts available for transactions that we had initially assigned AFA; and (2) rescission of review with respect to Company A.

## III.    ANALYSIS

### A.    Commerce's Reliance on Facts Available for Hyundai Steel

In the *Remand Order*, the Court directed Commerce to:

{I}dentify with specificity the control numbers and individual U.S. sales with respect to which it found a deficiency in the reported specification data (PRODCOD2U/H and SPECGRADEU/H); clearly describe the nature of each

---

[36] *Id.*
[37] *Id.* at 36.
[38] *Id.* at 37.
[39] *Id.*
[40] *Id.* at 38-39.
[41] *See* Order Granting Extension, CM/ECF Doc. 60, dated July 13, 2020.
[42] *See* Draft Results of Redetermination.
[43] *See* Hyundai Steel Draft Comments; *see also* U.S. Steel Draft Comments.

deficiency; and provide Hyundai an opportunity to fix it. Then, Commerce shall reconsider whether the use of facts otherwise available is warranted with respect to any of Hyundai's sales, and adequately explain and support its remand redetermination with substantial evidence.[44]

The Court further ordered that Commerce determine whether reliance on facts available is warranted for Hyundai Steel's U.S. sales of the [  ] control numbers at issue in this redetermination, pursuant to section 776 of the Act.[45]  The Court did not reach the issue of whether Commerce's adverse inference finding was supported by the record, but cautioned Commerce that a determination of whether facts available is warranted and whether a respondent did its subjective best to cooperate are two distinct findings.[46]

Pursuant to the Court's instructions, we also find it necessary to provide additional analysis of Hyundai Steel's sales to which we applied facts available in the *Final Results.*  Of the [  ] observations[47] of U.S. sales[48] covered by the [  ] control numbers at issue, we find that Hyundai Steel reported differing information for PRODCOD2U and SPECGRADEU for [  ] observations.[49]  In the Remand Supplemental Questionnaire, Commerce asked Hyundai Steel, among other things, to:

> Provide a detailed narrative explanation as to why the reported codes for PRODCOD2U and SPECGRADEU differ.[50]

---

[44] *See Remand Order* at 30.
[45] *Id.* at 30-31.
[46] *Id.*
[47] Commerce identified [  ] instances, herein referred to as "observations," where Hyundai Steel reported PRODCOD2U data that differed from SPECGRADEU data.  *See* Hyundai Steel's Letter, "Request for Additional Information:  *Hyundai Steel v. United States*, Slip Op. 21-47, Court No. 19-00099," dated June 2, 2021 (Remand Supplemental Questionnaire) at Attachment II.  An "observation" is a line item in Hyundai Steel's reported database.  A sale, as denoted by one or more invoices, may encompass one or more U.S. sale entries, and a U.S. sale entry may encompass one or more observations.
[48] *See* Hyundai Steel Preliminary Analysis Memorandum at 5 and Attachment 3.
[49] *See* Remand Supplemental Questionnaire at Attachment II.
[50] *Id.* at Attachment I.

8

In the Hyundai Steel Remand Supplemental Response, Hyundai Steel indicated that differences between PRODCOD2U and SPECGRADEU can arise because, as Hyundai Steel references, the language in Hyundai Steel's questionnaire instructed Hyundai to report PRODCOD2U information according to the manner that the merchandise was sold, whereas the CONNUMU field, which Hyundai Steel understood to relate to the SPECGRADEU field, incorporates information concerning how the merchandise was produced.[51]  Hyundai Steel further indicated that the product code for merchandise used in certain applications, such as formed parts for automobiles, will not necessarily reflect the same specification information associated with the imported steel.[52]

Regarding the [    ] U.S. observations identified in Commerce's Remand Supplemental Questionnaire, Hyundai Steel indicated that [    ] observations involved sales of formed parts.[53] Hyundai Steel indicated that the remaining [   ] observations were attributable to instances where product specifications could be reported interchangeably (*e.g.*, [            ] steel was sold as [            ] steel, dual phase steel was sold for a non-dual phase steel application, cold-rolled steel was subsequently processed as a non-subject pickled and oiled product, or a product imported as [      ] was manufactured and sold as [        ]).[54]  Hyundai Steel explained that in the remaining [   ] observations a customer had an urgent need and existing inventory was insufficient to fulfill a particular order, so Hyundai Steel substituted a different specification for the specification the customer actually ordered.  In each case where there is a substitution, Hyundai Steel obtains "written confirmation from its customer, generally after the customer has tested the product to

---

[51] *See* Hyundai Steel Remand Supplemental Response at 1-4.
[52] *Id.* at 3-4 (citing Hyundai Steel March 30, 2018 Section B, C and E Response at C-10 to C-11).
[53] *Id.* at 3-4 and Exhibit SQ1.
[54] *Id.* at 5-11 and Exhibit SQ2.

ensure its suitability."[55]  Although such situations are rare, they do occur in the ordinary course of business.[56]

U.S. Steel argues that the explanation for differing product code and specification information provided by Hyundai Steel in its Remand Supplemental Response is at odds with the explanation for these differences that Hyundai Steel offered to the Court.[57]  U.S. Steel argues that the reason for the difference between PRODCOD2U and SPECGRADEU set forth by Hyundai Steel is not solely due to further manufacturing processes.[58]  U.S. Steel further argues that Hyundai Steel's current explanation for such PRODCOD2U and SPECGRADEU differences is unavailing, because there are commercial differences between drawing steel and commercial steel,[59] Hyundai Steel's reporting is inconsistent with the physical characteristics of the steel itself,[60] dual phase steel and non-dual phase steel are not interchangeable products,[61] and cold-rolled steel and non-pickled (hot-rolled) steel have far different product applications.[62]

In rebuttal to U.S. Steel's comments, Hyundai Steel noted that the pool of sales for which Commerce made an adverse inference encompasses [    ] observations.[63]  Additionally, Hyundai Steel reiterated its argument that the differences between PRODCOD2U and SPECGRADEU primarily emanated from the company reporting PRODCOD2U as the merchandise was sold, whereas Hyundai Steel reported SPECGRADEU according to how the merchandise was

---

[55] *Id.* at 5.
[56] *Id.*
[57] *See* U.S. Steel Remand Supplemental Comments at 3.
[58] *Id.* at 4.
[59] *Id.* at 5.
[60] *Id.* at 7.
[61] *Id.* at 9.
[62] *Id.* at 10.
[63] *See* Hyundai Steel Remand Reply Comments at 3.  As previously noted, Commerce applied facts available with an adverse inference to all [    ] observations of the U.S. sales in question, within [   ] CONNUMs.  *See* Hyundai Steel Preliminary Analysis Memorandum at 5.

produced.[64]  Hyundai Steel further argues that it tied SPECGRADEU for the observations in

question to the applicable mill certificates associated with these observations.[65]  Finally, Hyundai

Steel argued that it reported SPECGRADEU in the instant review in the same manner that was

examined and approved by Commerce in the less-than-fair-value investigation of this

proceeding.[66]

*Commerce's Redetermination*

In determining in the underlying review to apply AFA to the [     ] observations now at

issue in this remand, Commerce noted the following:

> Hyundai's inconsistent reporting of product specification information precludes
> Commerce from accurately determining normal value, because Commerce cannot
> match the U.S. sales of these CONNUMs to the appropriate sales in Hyundai's home
> market database.[67]

We continue to note that Hyundai Steel has provided differing PRODCOD2U and

SPECGRADEU information for U.S. sales of the same CONNUM.  However, as previously

indicated in this redetermination, the Court instructed Commerce to both "identify with

specificity" the deficiencies in Hyundai Steel's control number reporting and to afford Hyundai

Steel an opportunity to remedy such deficiencies.[68]  We have, therefore, followed the Court's

instructions, resulting in a different dumping margin on remand.

Specifically, as instructed by the Court, for purposes of this redetermination, Commerce

has:

---

[64] *See* Hyundai Steel Remand Reply Comments at 3-5.
[65] *Id.* at 6-10.
[66] *Id.* at 15 (citing *Certain Cold-Rolled Steel Flat Products from the Republic of Korea:  Final Determination of Sales at Less Than Fair Value*, 81 FR 49953 (July 29, 2016) (*Final Determination*), and accompanying IDM at Comment 2).
[67] *See Final Results* IDM at Comment 2.
[68] *See Remand Order* at 30.

1)  Notified Hyundai Steel of the specific, [    ], observations for which PRODCOD2U and SPECGRADEU differed in its Remand Supplemental Questionnaire to Hyundai Steel;[69]

2)  Recognized that Commerce never directed Hyundai Steel to report PRODCOD2U in a manner other than based on how the merchandise was sold; and

3)  Recognized that Commerce never directed the company to report SPECGRADEU in a manner other than according to how the merchandise was produced.

In response, Hyundai Steel has provided in its Remand Supplemental Response an explanation as to why it reported differing PRODCOD2U and SPECGRADEU characteristics for the [    ] observations identified by Commerce.[70]  We find that explanation to be reasonable and consistent with record evidence.

The Court has directed Commerce to "clearly describe the nature of each deficiency" and "provide Hyundai {Steel} an opportunity to fix it."[71]  The Court also ordered Commerce to "reconsider whether the use of facts otherwise available is warranted with respect to any of Hyundai's sales."[72]  On remand, Commerce determines that Hyundai Steel's explanation provides a sufficient basis as to why there was a discrepancy between the relevant observations between the PRODCOD2U and SPECGRADEU fields.[73]  First, Hyundai Steel has consistently argued that it reported the PRODCOD2U for merchandise as sold and the SPECGRADEU field for merchandise as imported.[74]  Second, Commerce determines that information provided by

---

[69] *See* Remand Supplemental Questionnaire at Attachment II.
[70] *See* Hyundai Steel Remand Supplemental Response at 3-12.
[71] *See Remand Order* at 30.
[72] *Id.*
[73] *See* Hyundai Steel's Remand Supplemental Response at 2-4 (explaining that Hyundai Steel responded to the PRODCOD2U field as "not applicable" for formed parts because formed parts are "intermediate automobile parts produced and sold by Hyundai Steel's affiliated" and the affiliate "uses only a single product code for sales of formed parts in the normal course of business, which it reported in the field PRODCOD1U" and "PRODCOD5U" but no other field) and 5-12 and Exhibit 2 (explaining 4 scenarios where the merchandise ordered by a customer was substituted with a different acceptable type of merchandise).
[74] *Id.* at 1-2; *see also Remand Order* at 11.

Hyundai Steel in order to clarify reporting discrepancies between PRODCOD2U and SPECGRADEU was necessary in order to clarify why these fields did not match.

U.S. Steel argues that Hyundai Steel's explanation before Commerce is different than the explanation it provided to the Court in its briefs.[75]  Specifically, U.S. Steel argues that Hyundai Steel, in its Remand Supplemental Questionnaire Response, offered for the "first time" explanations as to why the PRODCOD2U and SPECGRADE2U fields differ, going beyond Hyundai Steel's initial explanation that this was due to further manufacturing activities.[76] However, whether or not Hyundai Steel's explanation is revised or radically different from what it argued to the Court is not before Commerce to consider on remand.  Rather, the Court has ordered Commerce to both specifically identify the deficiencies in Hyundai Steel's reporting of the PRODCOD2U and SPECGRADEU fields and afford Hyundai Steel an opportunity to remedy any such reporting deficiencies.[77]  That is precisely what we have done on remand. Commerce determines that the explanations provided by Hyundai Steel reasonably clarify the differences reported in the PRODCOD2U and SPECGRADEU fields for the [   ] observations at issue.

In addition to challenging the "newness" of Hyundai Steel's explanations, U.S. Steel also alleges that Hyundai Steel's statement that a customer would order one product and accept another misstates the facts and is not credible because certain of the products are commercially different, others are not interchangeable, and still others have different applications.[78]  The problem which Commerce faces in responding to such arguments is that U.S. Steel is alleging in its comments that Hyundai Steel's explanations, and the record evidence to which Hyundai Steel

---

[75] *See* U.S. Steel Remand Supplemental Comments at 3.
[76] *Id.* at 3-10.
[77] *See Remand Order* at 30.
[78] *See* U.S. Steel Remand Supplemental Comments at 5-10.

cites for support of its explanations, are speculative.  The only means by which Commerce would have to double-check the validity of Hyundai Steel's books and records, much less its explanation, to find out if the claims are not credible, as alleged by U. S. Steel, is to conduct a verification of Hyundai Steel's books and records, pursuant to section 782(i) of the Act. However, Commerce did not conduct a verification in the underlying review, was not ordered by the Court to conduct a verification in this review on remand, and we find no compelling reason to require explanation or evidence beyond what Hyundai Steel has provided on remand.  It is our determination that substantial evidence on the record supports Hyundai Steel's explanation for the discrepancy between the PRODCOD2U and SPECGRADEU fields for the relevant observations.

Therefore, based on the information provided by Hyundai Steel in its Remand Supplemental Questionnaire Response, for purposes of this Remand Redetermination, we are no longer relying on facts available in determining a rate for Hyundai Steel based on further consideration consistent with the *Remand Order*.

Accordingly, based upon the instructions in the Remand Order and Hyundai Steel's explanation, we have relied on the CONNUM coding provided by Hyundai Steel for the [    ] observations which were subject to the application of facts available with an adverse inference in the *Final Results*.

Finally, because Commerce is no longer relying on facts available with regard to Hyundai Steel, we have not considered whether Hyundai Steel cooperated to the best of its ability and whether an adverse inference is appropriate, pursuant to section 776(b) of the Act.[79]

---

[79] *See* Hyundai Steel's Remand Supplemental Response at 30-31.

B. Rescission of Review for Company A

Based on the Court's instructions in the *Remand Order*, we are rescinding our review with respect to Company A.

## VI.    COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On August 13, 2021, we released our Draft Results of Redetermination to interested parties.[80]  On August 23, 2021, U.S. Steel and Hyundai Steel provided comments.[81]  No other interested party submitted comments.

### Comment 1:  Application of Adverse Facts Available

*U.S. Steel Comments*[82]

- The discrepancies which U.S. Steel identified in Hyundai Steel's Supplemental Response are not "speculative."[83]  Rather, citing both *Nippon Steel* and *GOES from China*, U.S. Steel asserts that Hyundai Steel has failed to both cooperate to the best of its ability and to put forth its "maximum effort."[84]
- By issuing the Remand Supplemental Questionnaire, Commerce complied with the *Remand Order*.[85]  However, in this remand proceeding, Commerce improperly accepted "at face value the latest iteration of Hyundai's shifting narrative."[86]
- In the underlying review, Commerce noted differences between the PRODCOD2U and SPECGRADEU information.  In the *Final Results*, Commerce determined that these differences made it "unduly difficult" for Commerce to properly determine a CONNUM match.[87]  However, analysis of Hyundai Steel's Remand Supplemental Response indicates that these same, previously identified reporting discrepancies remain.  These discrepancies extend beyond differences that could be explained because of further manufacturing.[88]

---

[80] *See* Draft Results of Redetermination.
[81] *See* Hyundai Steel Draft Comments; *see also* U.S. Steel Draft Comments.
[82] *See generally* U.S. Steel Draft Comments.  In addition to the arguments raised in its case brief, U.S. Steel requested, in its final *ex parte* meeting with Commerce during the remand, that Commerce complete its remand redetermination under protest.  *See* Memorandum, "Cold-Rolled Steel Flat Products from the Republic of Korea: Meeting with Counsel for U.S. Steel," dated September 13, 2021.  As that is not an issue before the Court on remand, we will not address that request herein.
[83] *Id.* at 6 (citing Draft Redetermination at 13).
[84] *Id.* at 7 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003) (*Nippon Steel*); and *Grain-Oriented Electrical Steel from the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 79 FR 59221 (October 1, 2014), and accompanying Issues and Decision Memorandum at Comment 1 (*GOES from China*)).
[85] *Id.* at 2.
[86] *Id.*
[87] *Id.* (citing *Final Results* IDM at Comment 2).
[88] *See* U.S. Steel Draft Comments at 4.

- Discrepancies in Hyundai Steel's PRODCOD2U and SPECGRADEU reporting pertain also to activities unrelated to further manufacturing (e.g., the [      ] CONNUM). In such instances, Hyundai Steel reported the product sold to Hyundai Steel's U.S. customer with product specifications that differed from the information indicated on Hyundai Steel's invoice.[89] Additionally, U.S. Steel placed on the record of the underlying review the less than fair value (LTFV) investigation verification report.[90] Deficiencies similar to those identified by Commerce in the LTFV investigation continue to exist in this remand proceeding with regard to Hyundai Steel's reporting of PRODCOD2U and SPECGRADEU.[91]

- Hyundai Steel's reported SPECGRADEU data do not all properly characterize the physical characteristics of its merchandise. Hyundai Steel's explanation, relating to its second type of inconsistently reported specifications, indicates that dual phase steel was sold as non-dual phase steel.[92] However, Hyundai Steel incorrectly states that dual phase steel warrants a CONNUM quality characteristic of "25," when in fact only the relevant non-dual phase product should be coded as "25," high strength low alloy steel. The dual phase product should actually be coded as "20," advanced high strength steel.[93] U.S. Steel relies on exhibits of Commerce's LTFV investigation verification report, which are on the record, to support its arguments.[94]

*Hyundai Steel Comments*[95]

- Commerce correctly determined in the Draft Results of Redetermination to remove an adverse inference with respect to the [     ] sales at issue. Record evidence establishes that difference between PRODCOD2U and SPECGRADEU identified in Commerce's Remand Supplemental Questionnaire reflect the difference between the manner in which the merchandise was sold as opposed to the manner in which the merchandise was produced.[96]

- U.S. Steel's arguments relating to Hyundai Steel's CONNUM coding of dual phase and non-dual phase steel are too late and outside the scope of the *Remand Order*.[97] Moreover, Hyundai Steel properly coded its merchandise and fully disclosed its reporting from the outset of the case.[98] U.S. Steel oversimplifies the relationship between dual phase and non-dual phase steel and Hyundai Steel's coding of the quality CONNUM characteristic.[99] Coding dual phase steel as "25" is correct because definitions of merchandise vary across companies and time, particularly with respect to yield and

---

[89] *Id.* at 5-6 and 13.
[90] *Id.* at 8 (citing Attachment 9 to the U.S. Steel April 23, 2018 Rebuttal B-E Factual Information).
[91] *See* U.S. Steel Draft Comments at 8-9.
[92] *Id.* at 11-12.
[93] *Id.* at 13.
[94] *Id.* at 13-14.
[95] *See generally* Hyundai Steel Draft Comments.
[96] *Id.* at 4.
[97] *Id.* at 10-12.
[98] *Id.* at 12-14.
[99] *Id.* at 12-15.

tensile strength.[100]  Finally, Commerce examined this identical question in the investigation with respect to "Spec A" sales.[101]

**Commerce Position:**

In this final redetermination, we continue to maintain that application of facts available with or without an adverse inference, with regard to the [    ] transactions at issue, would be incompatible with the *Remand Order*.

In the *Final Results*, we stated:

> Hyundai's inconsistent reporting of product specification information precludes Commerce from accurately determining normal value, because Commerce cannot match the U.S. sales of these CONNUMs to the appropriate sales in Hyundai's home market database.[102]

However, the Court found that the June 18, 2018 Supplemental, issued by Commerce prior to the *Final Results*, failed to provide Hyundai Steel with adequate notice concerning its CONNUM reporting[103] and to identify specific deficiencies in Hyundai Steel's reporting of PRODCOD2U and SPECGRADEU.[104]   Further, the Court characterized Commerce's June 18, 2018 Supplemental as "broadly drawn"[105] and failing to meet the statutory requirement in section 782(d) of the Act, pertaining to the application of facts available, pursuant to section 776(a) of the Act, and adverse inferences, pursuant to section 776(b) of the Act, because it did not "identify the nature of the alleged 'deficiency' in Hyundai Steel's response with any specificity."[106]  Following the Court's *Remand Order*, we issued a supplemental questionnaire to Hyundai on June 2, 2021, and Hyundai provided a response in which it identified the reasons for

---

[100] *Id.*
[101] *Id.* at 15-16.
[102] *See Final Results* IDM at Comment 2.
[103] *See Remand Order* at 20
[104] *Id.* at 21.
[105] *Id.* at 27.
[106] *Id.*

differences between PRODCOD2U and SPECGRADEU.[107]  As in the Draft Results of

Redetermination, based on Hyundai's response to this supplemental questionnaire, we continue

to find that substantial evidence on the record supports Hyundai Steel's explanation, and that

facts available for the [   ] observations, in which Hyundai Steel reported differing

PRODCOD2U and SPECGRADEU information, is no longer warranted.

 U.S. Steel contends that Hyundai Steel has provided a "shifting narrative" concerning the

reason that information in the PRODCOD2U and SPECGRADEU fields differ.[108]  However,

Commerce's June 2, 2021 supplemental was the first instance in which Commerce specifically

identified the deficiencies in Hyundai Steel's reporting of the PRODCOD2U and

SPECGRADEU fields and afforded Hyundai Steel an opportunity to remedy any such reporting

deficiencies.[109]  In its remand supplemental response, Hyundai Steel indicated that its reported

PRODCOD2U and SPECGRADEU "may differ" because they are derived from different data

sources.[110]  Hyundai Steel further indicated that PRODCOD2U reflects information concerning

the manner in which the product was sold, whereas SPECGRADEU reflects information

concerning the physical characteristics of the merchandise.[111]  Accordingly, we find that U.S.

Steel's allegation that Hyundai Steel's narrative shifted over time is not supported by the record.

Rather, Hyundai Steel provided further details in its explanation as Commerce sought those

details to identify and address reporting discrepancies.

 Moreover, we find U.S. Steel's assertion that Hyundai Steel has failed to cooperate to the

best of its ability or to put have forth its "maximum effort" unpersuasive.[112]  Hyundai Steel has

---

[107] *See* Hyundai Steel Remand Supplemental Response.
[108] *See* U.S. Steel Draft Comments at 2.
[109] *See generally* Remand Supplemental Questionnaire.
[110] *See* Hyundai Steel's Remand Supplemental Response at 1.
[111] *Id* at 1-3.
[112] *See* U.S. Steel Draft Comments at 7 (citing *Nippon Steel*, 337 F.3d at 1382 and *GOES from China* IDM at
Comment 1).

fully responded to each of the questions put forth in Commerce's remand supplemental questionnaire.[113]  U.S. Steel also argues that similar deficiencies identified in the LTFV investigation are supported by the record of the instant review.[114]  U.S. Steel alleges that the verification report from the investigation is on the record of this administrative review and that Hyundai Steel indicated to the Court that the reason for the relevant discrepancies was "further manufacturing" in the United States.[115]  We note initially that the Court in this proceeding held that the investigation record "contained facts not present here."  The Court also distinguished the investigation from the instant case because, in the investigation, Hyundai Steel was "provided with notice of specific deficiencies in its data reporting" and "was afforded an opportunity to explain them."[116]  Further, although the Court referenced further manufacturing of steel in the United States as a reason why specification data for products "as produced" and "as sold" did not always match, it noted that this explanation is an "example" of why there may be a discrepancy between the two fields.[117]  It did not hold that this was the only explanation for such discrepancies.

U.S. Steel next alleges that Hyundai Steel did not properly code CONNUMs for certain observations, within the second type of inconsistency identified in Hyundai Steel's Remand Supplemental Response, based on their physical characteristics as reported in the SPECGRADEU field.[118]  Specifically, U.S. Steel contends that observations with two different SPECGRADEU specifications "as produced" and "as sold," the first dual phase, [     ], and the second non-dual phase, [     ], should not both be coded as high strength low alloy steel,

---

[113] *See generally* Hyundai Steel's Remand Supplemental Response.
[114] *See* U.S. Steel Draft Comments at 7-10.
[115] *Id.* at 8-10.
[116] *See Remand Order* at 28-29.
[117] *Id.* at 11.
[118] *See* U.S. Steel Draft Comments at 10-12.

with accompanying quality code (QUALITY) "25," and instead products with dual phase specifications should be coded as advanced high strength steel, bearing QUALITY characteristic "20."[119]  U.S. Steel relies on verification documents from the investigation, on the instant record, including two versions of the Advanced High-Strength Steels Application Guidelines, version 6.0 (2017) and version 5.0 (2014), to support its argument that Hyundai Steel's dual phase merchandise, specification [          ], is advanced high strength steel (QUALITY "20") and not high strength low alloy steel (QUALITY "25").[120]

We disagree that Hyundai Steel *per se* miscoded its dual phase merchandise, specification [          ], as high strength low alloy steel rather than advanced high strength steel.[121]  We observe that there are three versions (Versions 6.0, 5.0, and 4.1) of the Advanced High-Strength Steels Application Guidelines on the record.[122]  U.S. Steel points out that Version 6.0 and Version 5.0 describe dual phase steel as part of the advanced high strength steel "family."[123]  However, there is an additional nuance in Version 5.0, which indicates that "{s}teels with yield strength levels [                                        ] are

---

[119] *Id.* at 13-14.

[120] *Id.* at 13-15.

[121] Commerce also observes that, in the underlying investigation, there is a reference to the QUALITY characteristic of Hyundai Steel's CONNUMs and whether Hyundai Steel accurately coded certain merchandise as having a QUALITY code of "20."  *See Certain Cold Rolled Steel Flat Products from the Republic of Korea:  Final Results of Antidumping Duty Administrative Review; 2016-2017*, 84 FR 24083 (May 24, 2019), and accompanying IDM at 12 ("{T}he Department only stated that the company 'noted it had reported code '20' for QUALITY for the last four products listed on {a page of an investigation verification exhibit}.")  Hyundai Steel alleges that this issue is identical to the issue raised by U.S. Steel.  *See* Hyundai Steel Remand Reply Comments at 15-16.  However, because the analysis from the investigation regarding this issue is proprietary and not on the record of this review, we cannot determine whether the issue is identical or merely similar on remand.  Accordingly, we are not taking into consideration that claim for purposes of our redetermination on remand.

[122] The three versions are dated as follows Version 6.0 (April 2017), Version 5.0 (May 2014), and Version 4.1 (March 15, 2009).  *See* U.S. Steel's Letter, "Cold-Rolled Steel Flat Products from the Republic of Korea:  U.S. Steel's Submission of Factual Information Concerning Hyundai's Initial Sections B-E Questionnaire Response," dated April 23, 2018 at Attachment 2 (containing Version 6.0) and Attachment 9 (containing Exhibit 19, pages 73-76, Version 5.0); and Hyundai Steel's Letter, "First Administrative Review of Cold-Rolled Steel Flat Products from Korea: Hyundai Steel's Rebuttal Factual Information," dated May 7, 2018 at Attachment 2 (Version 4.1).

[123] *See* U.S. Steel Draft Comments at 13-14.

generally referred to as {advanced high strength steel.}"[124]  Hyundai's relevant dual phase

merchandise, specification [          ], has a yield strength of [                    ] and [

     ], and accordingly Commerce determines that it is unclear whether Hyundai Steel's

relevant merchandise, with specification [          ], is properly characterized as high strength low

alloy steel or advanced high strength steel.[125]

　　　While we acknowledge that Version 6.0 states that "today there are multiple phase

{advanced high strength steels} with tensile strengths as low as 440 MPa, and so using tensile

strength as the threshold for whether a steel qualifies as '{advanced high strength steel}' is no

longer suitable," we observe that tensile strength is not the only measurement that may indicate

whether a product is high strength steel alloy or advanced high strength steel.  For example, we

find that yield strength also varies.  Further, because the period of review begins March 7, 2016,

and ends August 31, 2017, we determine that Version 5.0, which was published in May 2014 and

extends to April 2017, is a more relevant indication of whether Hyundai Steel accurately coded

dual phase steel as high strength low alloy steel or advanced high strength steel.  Because

Version 5.0 was issued prior to the period of review and covers a larger duration of the period of

review, we determine Version 5.0 to be more relevant to understanding Hyundai Steel's coding

procedure in the immediate review.

　　　Additionally, U.S. Steel argues that [

                                                  ][126]  However, other documents on the

---

[124] *See* U.S. Steel's Letter, "Cold-Rolled Steel Flat Products from the Republic of Korea: U.S. Steel's Submission of Factual Information Concerning Hyundai's Initial Sections B-E Questionnaire Response," dated April 23, 2018 at Attachment 9 (containing Exhibit 19, page 76, Version 5.0).
[125] *See* Hyundai Steel March 30, 2018 Section B, C and E Response at Appendix I, page 9 (stating Hyundai Steel's relevant product's, [          ], mechanical characteristics).
[126] *See* U.S. Steel Draft Comments at 14 (citing U.S. Steel's Letter, "Cold-Rolled Steel Flat Products from the Republic of Korea:  U.S. Steel's Submission of Factual Information Concerning Hyundai's Initial Sections B-E Questionnaire Response," dated April 23, 2018 at Attachment 9 (containing Exhibit 19, page 85).

record, [                                                  ], seem to state the opposite,

[

                              ][127]  For all of these reasons, Commerce continues to accept

Hyundai Steel's CONNUM coding with respect to dual phase and non-dual phase products as

initially reported.

In addition, with respect to U.S. Steel's argument that Commerce may continue to apply

AFA in this remand, we disagree based on the Court's analysis set forth in the *Remand Order*.

Based on the foregoing, in this final redetermination, we have continued to rely on the

CONNUM coding provided by Hyundai Steel for the [    ] observations which were subject to

the application of facts available with an adverse inference in the *Final Results*.

---

[127] *See* Hyundai Steel March 30, 2018 Section B, C and E Response at Appendix I, page 9.

## V.     FINAL RESULTS OF REDETERMINATION

As a result of this final redetermination, Hyundai Steel's weighted-average dumping margin has changed from 36.59 percent in the *Final Results* to 1.82 percent.  Upon a final and conclusive decision in this litigation, Commerce will instruct U.S. Customs and Border Protection to liquidate and assess final duties for the entries subject to this review consistent with the final results of redetermination.  Additionally, we will rescind the review with respect to Company A.

9/24/2021

X ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Signed by: CHRISTIAN MARSH

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Christian Marsh
Acting Assistant Secretary
  for Enforcement and Compliance