# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| HYUNDAI STEEL CO., <br><br>  Plaintiff, <br><br>and <br><br>UNITED STATES STEEL CORPORATION, <br><br>  Consolidated Plaintiff, <br><br>and <br><br>NUCOR CORP., <br><br>  Consolidated Plaintiff-Intervenor, <br><br>  v. <br><br>UNITED STATES, <br><br>  Defendant, <br><br>and <br><br>UNITED STATES STEEL CORPORATION, <br><br>  Defendant-Intervenor, <br><br>and <br><br>HYUNDAI STEEL CO., <br><br>  Consolidated Defendant-Intervenor. | Consol. Court. No. 19-00099 |

## UNITED STATES STEEL CORPORATION'S COMMENTS IN OPPOSITION TO THE DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION

Thomas M. Beline
Jack A. Levy
Sarah E. Shulman
Chase J. Dunn
CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel to United States Steel Corporation*

October 25, 2021

**Table of Contents**

|  |  |  | Page |
|---|---|---|---|
| **I.** | BACKGROUND | | 1 |
| | A. | The Court's Remand Order | 2 |
| | B. | Commerce's Remand Proceedings | 3 |
| **II.** | ARGUMENT | | 5 |
| **III.** | CONCLUSION | | 9 |

# Table of Authorities

Page(s)

Court Cases

*Shenzhen Xinboda Indus. Co. v. United States,* 456 F. Supp. 3d 1272
(Ct. Int'l Trade 2020) ...................................................................................................5

*Nippon Steel Corp. v. United States,* 337 F.3d 1373 (Fed. Cir. 2003) ............................9

Administrative Determinations

*Certain Cold-Rolled Steel Flat Products from the Republic of Korea:
Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg.
49,953 (July 29, 2016) ..................................................................................................6

*Grain-Oriented Electrical Steel from China: Final Determination of
Sales at Less Than Fair Value*, 79 Fed. Reg. 59,226 (Oct. 1, 2014) .............................9

These comments are submitted by consolidated plaintiff, United States Steel Corporation ("U. S. Steel"), in opposition to the Department of Commerce's final results of redetermination pursuant to remand. *See Hyundai Steel Co. et al. v. United States*, Court No. 19-00099, Slip. Op. 21-47 (CIT Apr. 27, 2021), Final Results of Redetermination Pursuant to Court Remand (ECF Nos. 61, 62) ("*Remand Redetermination*"). For the reasons discussed herein, U. S. Steel respectfully requests that the Court remand this matter back to the United States Department of Commerce ("Commerce") for further consideration.

**I. BACKGROUND**

As discussed below, Commerce complied with the Court's instructions by issuing another supplemental questionnaire to Hyundai and affording it yet another opportunity to address the chronic deficiencies surrounding its product reporting. But Commerce went too far by accepting at face value the latest iteration of Hyundai's shifting narrative. According to Commerce, "whether or not Hyundai Steel's explanation is revised or radically different from what it argued to the Court is not before Commerce to consider on remand." *Remand Redetermination* at 13.

U. S. Steel respectfully submits that, when considering the issues on remand, Commerce felt unduly constrained by the Court's instructions and unable to exercise its discretion to reach a different conclusion. A fair reading of the record reveals that nothing has changed since Commerce's original *Final Results*. There is no dispute that, with respect to the CONNUMs at issue, the product identified on the U.S. sales invoice will frequently differ from the actual product being sold to the customer. It is therefore still "unduly difficult for Commerce to determine the proper specification for an accurate match." *Hyundai Steel Company v. United States*, Slip. Op. 21-47, Consol. Court No. 10-00099 (Ct. Int'l Trade Apr. 27, 2021) ("*Remand Order*") at 16 (quoting *Certain Cold Rolled Steel Flat Products from the Republic of Korea*, 84

1

Fed. Reg. 24,083 (May 24, 2019) and accompanying Issues and Decision Memorandum (May 17, 2019) ("*Final Results*") at 15). Moreover, Hyundai's shifting narratives about why it failed to report consistent product specification information constitutes a failure to cooperate to the best of its ability, warranting the application of adverse facts available ("AFA").

**A.       The Court's Remand Order**

In reviewing the *Final Results*, the Court stated, *inter alia*:

- "{I}n the SPECGRADEU field, Hyundai reported that the specification of the product that was produced in Korea by Hyundai and imported into the United States by Hyundai Steel America. In the PRODCOD2U sub-field, Hyundai reported the specification of the product that, in some instances, had been further manufactured by its U.S. affiliate, Hyundai Steel America, and then sold to unaffiliated U.S. customers." *Id.* at 10.

- "Hyundai explained its method, stating that it was relying on Hyundai Steel America's U.S. *sales* (*i.e.*, sales made in the United States) invoices as the basis for the specification data reported in PRODCOD2U, and Hyundai Steel America's *purchasing* records for specification data reported in SPECGRADEU." *Id.*

- "In other words, the specification data for products "as purchased" and "as sold" did not always match because the specification in Hyundai Steel America's purchasing records ***did not always match the specification in its sales invoice, due to, for example, the further manufacturing of steel in the United States***." *Id.* at 11 (emphasis added).

- "The reported data may well have been perfectly accurate (*i.e.*, correct) and yet, according to Commerce, deficient… Hyundai could have attempted to explain or remedy the alleged deficiency and eliminate the claimed undue difficulty." *Id.* at 28, 30.

In reaching its decision, the Court was apparently led to understand that Hyundai had a perfectly benign explanation for the mismatch between its SPECGRADEU and PRODCOD2U fields — *i.e.*, that the "perceived deficiency" was "***due to … the further manufacturing of steel in the United States***." *Id.* at 6 (emphasis added).

2

### B. Commerce's Remand Proceedings

On remand, Commerce cured the procedural defects identified by the Court through the issuance of a supplemental questionnaire on remand. And notably, in its questionnaire response, Hyundai admitted that the Court was entirely mistaken in its belief that further manufacturing by Hyundai Steel America ("HSA") explains the mismatch between its SPECGRADEU and PRODCOD2U fields. Specifically, Hyundai stated that:

> {T}he difference between PRODCOD2U and SPECGRADEU in these cases is ***not related to the further manufacturing process***. That is, the further manufacturing processes in the United States do not result in a physical change to the steel specification.

*Letter from Hyundai Steel Company, Supplemental Questionnaire Response* (June 16, 2021) ("*Hyundai Remand QR*") at 12 (emphasis added) (P.R.R. 6) (C.R.R. 3-4).[1]

As part of its ever-shifting narrative, Hyundai is now claiming that "{t}his does not mean that … the specification 'changed' after entering the United States" but rather that "these represent situations in which Hyundai Steel substituted a suitable specification in order to fulfill a customer's order." *Id.* at 5. In effect, Hyundai is now saying that, with respect to the CONNUMs of concern identified by Commerce, ***the product identified on the U.S. sales invoice will differ from the actual product being sold to the customer***.

In its comments to Commerce, U. S. Steel explained how Hyundai's latest factual representations are still unreliable, and how little has changed since the original administrative review. *See Comments of U. S. Steel Concerning Hyundai Steel's Response to Commerce's June 2, 2021 Request for Additional Information* (June 22, 2021) ("*June 22 Comments*") (P.R.R. 7) (C.R.R. 5). U. S. Steel therefore urged Commerce to reach the same conclusion because:

---

[1] All citations to the administrative record take the from "P.R." and "C.R." or, for the remand record, "P.R.R." and "C.R.R."

(1) contrary to Hyundai's representations, it is still "unduly difficult for Commerce to determine the proper specification for an accurate match" and (2) "Hyundai's failure to report consistent product specification information constitutes a failure by Hyundai to cooperate to the best of its ability." *Remand Order* at 16 (quoting Commerce's *Final Results*).

The record is now perfectly clear that, up until the remand proceedings, Hyundai obfuscated the truth that it "substituted" products as delivered to the U.S. customer, even though the product identified in the U.S. sales database will say something different. Insofar as invoices are usually what Commerce relies upon to tie to the U.S. sales database, and insofar as the correct product should be matched to a suitable home market sale, it is still unduly difficult for Commerce to create an accurate match.

Notwithstanding these points, it appears that Commerce felt compelled in its remand redetermination to afford full faith and credit to Hyundai's latest narrative and ascribed no significance to Hyundai's track record of shifting narratives. In particular, Commerce stated that "whether or not Hyundai Steel's explanation is revised or radically different from what it argued to the Court is not before Commerce to consider on remand." *Remand Redetermination* at 13. Commerce "continue{d} to note that Hyundai Steel has provided differing PRODCOD2U and SPECGRADEU information for U.S. sales and of the same CONNUM," but accepted Hyundai's latest narrative at face value, stating that it "provides a sufficient basis as to why there is a discrepancy between the relevant observations between the PRODCODE2U and SPECGRADEU fields." *Id.* at 11-12. Based on this conclusion, Commerce's remand redetermination "accept{s} the control number reporting employed by Hyundai … and is no longer relying on facts available…." *Id.* at 1.

4

## II. ARGUMENT

Commerce's remand redetermination appears to mistake the Court's decision as somehow requiring Commerce to blind itself to Hyundai's troubling history of failing to cooperate to the best of its ability. It does not.

To be sure, the Court faulted Commerce for citing its application of facts available to Hyundai in the underlying investigation as a justification for applying facts available in the instant administrative review. *Remand Order* at 28-29 ("to the extent Commerce argues that its use of adverse facts available in a prior segment (the investigation), which this Court sustained in *Hyundai Steel*, justified its use of adverse facts available in this review, the court is unpersuaded"). But importantly, the Court did *not* preclude Commerce from considering Hyundai's failure to put forth maximum effort, as reflected in its history of providing incomplete responses and a shifting narrative to explain away inconsistencies in its product reporting.

Presented with Hyundai's failures from the original investigation on accurate product reporting as a basis for applying adverse inferences in this administrative review, the Court reminded Commerce that "each administrative review is a separate segment of an antidumping proceeding and each with its own, unique administrative record." *Id.* at 28 (quoting *Shenzhen Xinboda Indus. Co. v. United States*, 456 F. Supp. 3d 1272, 1285 n.22 (Ct. Int'l Trade 2020)). But to be clear, the administrative record *in this proceeding* demonstrates the following:

- In the Verification Report from the underlying investigation — which was placed on the administrative record of this review[2] and cited by U. S. Steel prior to Commerce's *Preliminary Results* of this review — Commerce noted Hyundai's representation that the "***same information*** is reflected in the PRODCOD2U field" as in the "SPECGRADEU field." *U. S. Steel Sections B-E Rebuttal Factual Information Submission* (Apr. 23, 2018) at Attachment 9 ("RFI Submission") (P.R. 91-107) (C.R. 151-174); *U. S. Steel's Deficiency Comments Concerning Hyundai Steel's Initial Sections A-E Questionnaire Response* (May 16, 2018) at 7 & n.21 (P.R. 125) (C.R. 177) (citing to Commerce's Verification Report and discussing Hyundai's Steel's past representations concerning "inconsistent information relating to product specifications and CONNUMs").

- U. S. Steel explicitly referenced this history in its September 10, 2018 comments, noting that Hyundai originally represented to Commerce that the PRODCOD2U field and the "SPECGRADEU field contain "***precisely the same information***." *U. S. Steel's Pre-Preliminary Comments Concerning Hyundai* (Sept. 10, 2018) (P.R. 151) (C.R. 313) at 12-13 (emphasis added) (quoting *Certain Cold-Rolled Steel Flat Products from the Republic of Korea; Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 49,953 (July 29, 2016) and accompanying Issues and Decision Memorandum at Comment 12 ("When asked why it has not reported a SPECGRADEU field in its U.S. sales database, … Hyundai stated that the same information is reflected in the PRODCODE2U field.")). Here again, these factual representations were part of the record of this review.

- When asked by Commerce to "ensure that you have accurately reported all product specifications in your sales and cost reporting," Hyundai responded in its supplemental questionnaire that it "reported accurately all product specifications in the sales and cost databases." *Hyundai Steel Supplemental Questionnaire Response* (July 11, 2018) (P.R. 139) (C.R. 208) at 12. Through its response, Hyundai deliberately withheld corrective information concerning statements *already on the record of the administrative review* that SPECGRADEU and PRODCOD2U fields contained the exact same information.

---

[2] Commerce routinely relies upon factual information from prior case segments where such information is properly placed on the record of the relevant case segment and bears upon the issue under analysis. *See generally* Administrative Protective Order, A-580-881 (3/7/16-8/31/17) (November 14, 2017) ("An authorized applicant may use business proprietary information submitted in this segment of the proceeding in this segment. If business proprietary information that is submitted in this segment of the proceeding is relevant to an issue in two consecutive subsequent administrative reviews, an authorized applicant may place such information on the record of those reviews. If business proprietary information submitted in this segment of the proceeding is relevant to an issue in other segments of this proceeding (such as scope, anticircumvention, changed circumstances) that are initiated before publication of the final results in the second consecutive subsequent administrative review, an authorized applicant may place such information on the record of those segments.").

6

- Then, in its case brief, Hyundai shifted its narrative, disclosing *for the first time* that, "{i}n a few instances the two data sources {SPECGRADEU and PRODCOD2U} differed, for valid commercial reasons…" *Hyundai Steel Case Brief* (Nov. 20, 2018) (P.R. 180) (C.R. 344) at 6.

- Then, on appeal before the court, Hyundai led the Court to understand that the "valid commercial reason" for the differences between SPECGRADEU and PRODCOD2U was supposedly "the further manufacturing of steel in the United States." *Remand Order* at 6.

- Finally, on remand before Commerce, Hyundai shifted its narrative again, stating that — contrary to what the Court was led to believe — further manufacturing in the United States did *not* explain the differences between SPECGRADEU and PRODCOD2U. Now, Hyundai's latest story is that SPECGRADEU denotes the actual physical characteristics of the product and how it was CONNUM-coded, while PRODCODE2U denotes how the product was invoiced to the customer, which was sometimes at odds with what the product actually was. *See Hyundai Remand QR* at 4-5.

The key point here is that, while the Court's *Remand Order* did not allow Commerce to impute a failure to cooperate from the original investigation, it would have been entirely appropriate for Commerce to consider Hyundai's refusal to apply "maximum effort" in the administrative review, including Hyundai's incomplete responses and shifting narratives up until the remand proceedings. The issue was put squarely to Hyundai early on, Hyundai responded and explained itself in longer sentences in its case brief and again before the Court, yet only during remand — and for the first time — did Hyundai explain that it did not actually sell what it said it sold.

Hyundai has provided no reasoned basis as to why it could not have provided a narrative explanation of this fact in its original or supplemental questionnaire responses or in its administrative or appeal briefs. Commerce need not — and should not — be indifferent to Hyundai's chronic failures to cooperate to the best of its ability, particularly where the fundamental problems that prompted Commerce to apply AFA in the *Final Results* remain unresolved. But feeling constrained by the Court's *Remand Order*, Commerce mistakenly

7

believed that "whether or not Hyundai Steel's explanation is revised or radically different from what it argued to the Court is not before Commerce to consider on remand." *Remand Redetermination* at 13.

In its redetermination, Commerce also seems to think that it is now required to endorse the latest version of Hyundai's shifting narrative because the substantive concerns raised by U. S. Steel are "speculative" and the "only means" to assess the truth of the matter is "to conduct a verification." *Id*. at 14. Commerce then inexplicably concludes that there is "no compelling need to conduct a verification" and merely accepts Hyundai's latest statements at face value — *i.e.*, "*based on the information provided by Hyundai … we have relied on the CONNUM coding provided by Hyundai Steel for the {numerous} observations which were the subject of the application of facts available with an adverse inferences in the Final Results.*" *Id.*

In fact, even if Commerce were to pay no mind to the differences between PRODCODE2U and SPECGRADEU,[3] it must still be concerned that Hyundai is miscoding its sales — *i.e.*, contrary to Hyundai's latest narrative, its *SPECGRADEU data do not properly align with its CONNUM reporting*. Commerce had an obligation to consider and weigh all record evidence — not to merely accept Hyundai's latest narrative at face value, without considering

---

[3] For the reasons discussed in the *June 22 Comments*, Commerce should continue to be deeply concerned about the distortive effects of a situation where Hyundai invoices products to customers that were qualitatively different (*e.g.*, different CONNUMs and physical properties, different market values, different production costs) from what those products actually were.

To use an apt analogy, in a case involving mules, it would certainly be alarming to learn that Hyundai sometimes invoices — (and presumably prices) — its mules as horses, per PRODCOD2U. The fact that the SPECGRADEU and CONNUM coding may consistently show the production and sale of a mule would not eliminate the distortive effects flowing from the marketing and sale of the mule as a horse. In fact, it would mask the margin of dumping.

Such circumstances alone make it unduly difficult for Commerce to make an accurate match, and such challenges are aggravated by Hyundai's chronic failure to be transparent and cooperative in disclosing and explaining these reporting issues.

8

Hyundai's track record of shifting narratives which exhibits a failure to cooperate to the best of its ability. *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

### III. CONCLUSION

Commerce has now complied with the Court's instructions to give Hyundai yet another opportunity to explain inconsistencies in its product reporting. And given the record evidence in this proceeding, it is hardly "speculative" to conclude that Hyundai's ever-shifting explanations about its CONNUM coding result in a situation where it is still "unduly difficult for Commerce to determine the proper specification for an accurate match" and "Hyundai's failure to report consistent product specification information constitutes a failure by Hyundai to cooperate to the best of its ability," thus warranting the application of adverse facts available. It continues to be the case that Hyundai has "significantly impeded the {proceeding} by repeatedly providing responses that were incomplete or appeared to contradict other information of record." *Grain-Oriented Electrical Steel from China: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 59,226 (Oct. 1, 2014), IDM at Comment 1.

Insofar as this Court's *Remand Order* was based on the false narrative that the mismatch between Hyundai's SPECGRADEU and PRODCOD2U fields was "due to …. the further manufacturing of steel in the United States," and insofar as Hyundai continued with its shifting narrative up until the remand proceeding before Commerce, Commerce had the authority and discretion to apply adverse factual inferences because such shifting narratives constituted a failure of Hyundai to cooperate to the best of its ability. But Commerce erroneously believed that the Court divested it of such authority on remand.

Accordingly, U. S. Steel requests that this Court remand to Commerce with instructions to review its redetermination, taking into consideration that it has the authority to continue

9

applying adverse factual inferences if, in light of Hyundai's shifting narratives in these proceedings, it finds that the respondent has failed to cooperate to the best of its ability.

Respectfully submitted,

/s/ Thomas M. Beline

Thomas M. Beline
Jack A. Levy
Sarah E. Shulman
Chase J. Dunn

Date: October 25, 2021

## Certificate of Compliance with Chambers Procedures 2(B)(1)

The undersigned hereby certifies that the forgoing submission of "United States Steel Corporation's Comments in Opposition to the Department of Commerce's Remand Redetermination" filed on October 25, 2021, contains 3,333 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 10,000 word count limitation set forth in rule 2(B)(1) of the Standard Chambers Procedures of the U.S. Court of International Trade.

BY: /s/ Thomas M. Beline<br>Thomas M. Beline