## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| HYUNDAI STEEL CO., <br><br> Plaintiff, <br><br> UNITED STATES STEEL CORP., <br><br> Consolidated Plaintiff, <br><br> and <br><br> NUCOR CORP., <br><br> Consolidated Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> UNITED STATES STEEL CORP., <br><br> Defendant-Intervenor, <br><br> and <br><br> HYUNDAI STEEL CO., <br><br> Consolidated Defendant-Intervenor. | Consol. Court No. 19-00099 <br><br> PUBLIC VERSION <br> BPI removed from pages <br> 5, 7 10, 11, 14 |

### DEFENDANT'S RESPONSE TO
### COMMENTS ON THE REMAND REDETERMINATION

Pursuant to the United States Court of International Trade Rule 56.2(h)(3) and this Court's orders dated April 27, 2021, and July 13, 2021, defendant, the United States, respectfully submits its response to the comments on the remand redetermination filed by Hyundai Steel Co.

(Hyundai) and United States Steel Corporation (U.S. Steel). The Department of Commerce has complied with the remand order by notifying Hyundai of the specific nature of the deficiency that Commerce identified in the Final Results, providing Hyundai with an opportunity to remedy the deficiency, and reconsidering whether facts available is warranted. Commerce's determination, to no longer rely on facts available, is further supported by substantial evidence and in accordance with law. The Court should, accordingly, sustain the remand redetermination and enter judgment in favor of the United States.

BACKGROUND

In its Final Results, Commerce determined that it could not match certain United States sales to corresponding sales in the Korean home market due to Hyundai's inconsistent reporting of certain product characteristics. *Cold Rolled Steel Flat Products from Korea*, 84 Fed. Reg. 24,083, 42,084 (Dep't of Commerce May 24, 2019) (Final Results) and accompanying Issues and Decision Memorandum (IDM) at Comment 2. Despite efforts to clarify the inconsistency in a supplemental questionnaire, Commerce found that necessary information was not on the record, Hyundai withheld necessary information, and Hyundai failed to act to the best of its ability. *Id.* at Comment 2; *Certain Cold Rolled Steel Flat Products from the Republic of Korea: Preliminary Results of Antidumping Duty Administrtaive Review and Partial Rescission of Review; 2016-2017*, 83 Fed. Reg. 51,661 (Dep't of Commerce October 12, 2018) (Preliminary Results) and accompanying Preliminary Decision Memorandum at 8-10.

Commerce generally relies on product control numbers (CONNUMs), which code characteristics for subject merchandise, to compare merchandise between comparison, *i.e.*, home markets or third-country markets, and United States markets. Antidumping Questionnaire at B-6 to B-7 and B-37; P.R. 25; *see also Union Steel v. United States*, 823 F. Supp. 2d 1346, 1349-50

(Ct. Int'l Trade 2012) (explaining that control numbers define products based on physical characteristics and are relied on to determine identical merchandise for purposes of Commerce's price comparison). Commerce relies on CONNUMs, reported by respondents, and the related comparisons to determine a weighted average dumping margin in the context of its administrative reviews. Antidumping Questionnaire at B-6 to B-7 and B-37, P.R. 25. In addition to requesting Hyundai to report CONNUMs for its merchandise in its initial questionnaire, Commerce requested that Hyundai separately report "product codes" (PRODCODH/U) for products sold in both the home and U.S. markets. *Id.* at B-3 to B-32 and B-33 to C-30, P.R. 25. A product code is created from characteristics Hyundai assigns to products based on an internal coding system, and it contains several subfields for different characteristics of merchandise including one for specification (PRODCOD2H/U). Hyundai's Section A Questionnaire Response March 8, 2018, at A-37 to A-38, P.R. 44, C.R. 8; Hyundai's Questionnaire Response May 30, 2018 at B-8 to B-9 and C-10 to C-11, P.R. 83-84, C.R. 131-132. Commerce also requested Hyundai report specification data (SPECGRADEH/U) separately for products sold in the home and U.S. markets, in sections B and C of its antidumping questionnaire. Antidumping Questionnaire at B-4 through B-6, B-8, B-34 through B-36, and B-39; P.R. 25. The SPECGRADEH/U fields in section B and C of Commerce's initial questionnaire were identical and asked Hyundai to report the "specification/designation/type/grade of the product," referring to international standards, including standards set by ASTM International. Antidumping Questionnaire at B-7 and B-39, P.R. 25.

      Commerce identified that certain sales observations, in Hyundai's United States sales database, were not reported with matching information in their SPECGRADEU and

PRODCOD2U fields. Preliminary Results, and accompanying PDM at 9-10. As a result, Commerce issued a supplemental questionnaire, but Hyundai's supplemental response simply confirmed that all of Hyundai's sales had been reported properly. Hyundai's Supplemental Response July 11, 2018, at 12, P.R. 139, C.R. 208. In both the Preliminary Results and Final Results, Commerce applied facts available with an adverse inference to all observations within CONNUMs where Commerce had identified an observation with inconsistent information reported between the SPECGRADEU and PRODCOD2U fields. Final Results, and accompanying IDM at 13-15; Preliminary Results, and accompanying PDM at 8-10. It further explained that, due to the discrepancy, the inconsistency "preclude{d} Commerce from accurately determining {normal value} by preventing Commerce from determining an accurate match between U.S. sales of {the affected} CONNUMs and appropriate sales in Hyundai's home market database." Final Results, and accompanying IDM at 15. Hyundai's margin in the Final Results was determined to be 36.59 percent. *Id.* at 24,084.

Hyundai challenged Commerce's reliance on facts available, and this Court remanded the Final Results. *Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309, 1324 (Ct. Int'l Trade 2021) (*Hyundai*). It held that Commerce's use of facts available was not supported by substantial evidence nor in accordance with law. *Id* at 1324-28. Specifically, the Court found that Commerce's supplemental questionnaire did not satisfy the notice requirement in 19 U.S.C. § 1677m(d) because it failed to identify the nature of the alleged deficiency in Hyundai's response with specificity. *Id.* at 1326. Accordingly, the Court held that Commerce did not give Hyundai "adequate notice of the nature of the deficiency" and ordered Commerce to reconsider whether facts available is warranted with respect to Hyundai's sales. *Id.* at 1328. Because the

Court remanded Commerce's reliance on facts available, it did not consider Commerce's application of an adverse inference. *Id.*

Commerce issued its draft remand redetermination on August 23, 2021. Draft Remand Results, R.P.R. 12, R.C.R. 7. Prior to issuing the draft remand redetermination, or even issuing a supplemental questionnaire response to Hyundai, at U.S. Steel's request, Commerce met with U.S. Steel. U.S. Steel First *Ex Parte* Meeting, R.P.R. 10. Commerce identified the discrepancies that it determined to exist in the Final Results, with specificity, by issuing Hyundai an additional supplemental questionnaire and pinpointing the [ ] observations in Hyundai's sales database that presented inconsistencies. Supplemental Remand Questionnaire, R.P.R. 1, R.C.R. 1-2. Hyundai provided additional information and explained in further detail why the relevant inconsistencies existed. Hyundai Remand Supplemental Response, R.P.R. 6, R.C.R. 3-4. It divided the inconsistent observations into four groups and provided an explanation regarding why there was an inconsistency for each group of affected observations. *Id.* R.P.R. 11. U.S. Steel was provided an opportunity to submit rebuttal factual information, and Hyundai was allowed an opportunity to reply. U.S. Steel Rebuttal Submission June 22, 2021, R.P.R. 7, R.C.R. 5; Hyundai Reply Submission June 28, 2021, R.P.R 10, R.C.R. 6. On the day that Hyundai filed its reply comments, Commerce met with Hyundai, at Hyundai's request. Hyundai's First *Ex Parte* Meeting, R.P.R. 11.

In light of Hyundai's response to Commerce's supplemental remand questionnaire, U.S. Steel's rebuttal to Hyundai's response, and Hyundai's reply to U.S. Steel's rebuttal, Commerce determined, in its draft remand redetermination, that relying on facts available was no longer necessary. Draft Remand Results at 13-14, R.P.R. 12, R.C.R. 7. Hyundai filed comments on Commerce's draft remand redetermination on August 23, 2021. Hyundai Remand Comments,

R.P.R. 14, R.C.R. 12. U.S. Steel filed comments on August 24, 2021. U.S. Steel Remand Comments, R.P.R. 15, R.C.R. 13. Commerce also met with both parties separately a second time to discuss their comments. U.S. Steel Second Ex Parte Meeting, R.P.R. 18; Hyundai Second Ex Parte Meeting, R.P.R. 19. In its final remand redetermination, Commerce determined a margin of 1.82 percent, without relying on facts available. Final Remand Results at 23, R.P.R. 20; R.C.R. 14.

## ARGUMENT

I. Standard of Review

In reviewing Commerce's determinations, the Court "must sustain 'any determination, finding or conclusion' found by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)(I)). This standard applies equally to a remand redetermination. *See, e.g.*, *Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2012). The Court also reviews Commerce's remand redetermination to ensure compliance with the Court's remand order. *Tai Shan City Kam Kiu Aluminium Extrusion Co. v. United States*, 125 F. Supp. 3d 1337, 1341 (Ct. Int'l Trade 2015).

II. Commerce Complied With The Court's Order

Commerce's determination on remand complies with the Court's order because it identified the nature of the deficiency determined to exist in the Final Results with specificity, permitted Hyundai an opportunity to remedy the deficiency, reconsidered its facts available determination, and adequately explained and supported the remand redetermination with substantial evidence. This Court remanded Commerce's determination to "(1) identify with

specificity the control numbers and individual U.S. sales with respect to which it found a deficiency in Hyundai's reported specification data (PRODCOD2U/H and SPECGRADEU/H), (2) clearly describe the nature of each deficiency, {} (3) provide Hyundai an opportunity to remediate it" and (4) "reconsider whether the use of facts otherwise available is warranted with respect to any of Hyundai's sales, and adequately explain and supports its remand redetermination with substantial evidence." *Hyundai*, 518 F. Supp. 3d at 1333. The Court also ordered Commerce to "rescind its assignment of the all-others rate to a company, with a business proprietary name, pursuant to a second independently contested determination." *Id.* Commerce rescinded its assignment of the all-others rate to that company, and no party has raised any argument with respect to this second issue.

The events on remand demonstrate how Commerce complied with the first three steps of the first issue of the Court's order. Specifically, Commerce issued a supplemental questionnaire concerning Hyundai's United States sales on June 2, 2021. Supplemental Remand Questionnaire, R.P.R. 1, R.C.R. 1-2. In this supplemental questionnaire, Commerce set out the [ ▉ ] control numbers to which it previously applied facts available and provided a spreadsheet identifying the [ ▉ ] observations in Hyundai's United States sales database, within these control numbers, that it considered inconsistent in the Final Results. *Id.* On June 16, 2021, Hyundai filed its response to Commerce's supplemental questionnaire. Hyundai's Supplemental Response, R.P.R. 6, R.C.R. 3-4. In its final remand redetermination, Commerce considered Hyundai's submission, U.S. Steel's rebuttal comments, Hyundai's reply to the rebuttal comments, and the parties' comments on the draft remand redetermination. Final Remand Results at 7-14, R.P.R. 20, R.C.R. 14. In considering this information and explanation as to why SPECGRADEU and PRODCOD2U were inconsistent for certain observations, Commerce

determined that it no longer needed to rely on facts available in determining a margin for Hyundai.  *Id.*  For these reasons, Commerce complied with the first three steps of the Court's remand order.

III. Commerce's Determination To No Longer Rely On Facts Available Is Supported By Substantial Evidence And In Accordance With Law

Commerce's remand redetermination is also supported by substantial evidence and in accordance with law because Commerce considered Hyundai's further explanation, regarding why Hyundai's reported SPECGRADEU and PRODCOD2U fields for certain observations were not identical, and found it reasonable.  Because Commerce seeks to determine one weighted-average dumping margin to apply to subject merchandise, it necessarily deals with various forms of a product.  *Union Steel*, 823 F. Supp. 2d at 1349.  To achieve this, Commerce gives each unique product a control number.  *Id.*  A control number or "CONNUM" identifies "a unique product (defined in terms of a hierarchy of specified physical characteristics determined in each antidumping proceeding)." *Id.*  All products whose product hierarchy characteristics are identical are deemed to be part of the same CONNUM and are regarded as 'identical' merchandise for purposes of the price comparison.  *Id.*

Each CONNUM, in the instant review, is composed of a series of eight codes representing (1) the paint on the merchandise, (2) its minimum carbon content, (3) its quality (whether it is "ultra high strength steel," "advanced high strength steel," "high-strength low-alloy steel," "structural steel", "commercial steel", or "drawing steel") (4), its minimum yield strength, (5) its nominal thickness, (6) its nominal width, (7) its form (whether it was coil and its shape), and (8) whether it was heat treated.  Antidumping Questionnaire at B-9 to B-13, and B-39 to C-5, P.R. 25.  Commerce relies on CONNUMs to ensure that it is making an 'apples-to-apples'

comparison of sales in comparison markets, *i.e.*, home markets and third country markets, and United States markets.

In sections B and C of its questionnaire, Commerce requested that Hyundai report the "Complete Product Code" and "Matching Control Number" in fields 1 and 2, respectively, for Commerce to rely on in its comparison for calculating the overall dumping margin. Antidumping Questionnaire at B-4 to B-7 and B-34 to B-37, P.R. 25. Commerce also requested that Hyundai report "product codes," in the PRODCODH/U fields, for products sold in the home and U.S markets. Antidumping Questionnaire at B-3 to B-32 and B-33 to C-30, P.R. 25. A product code is comprised of characteristics Hyundai assigns to products based on an internal coding system, and it contains several subfields, which Hyundai was asked to report, for different characteristics of merchandise, including one for specification (the PRODCOD2H/U, field).[1] Hyundai's Section A Questionnaire Response March 8, 2018, at A-37 to A-38, P.R. 44, C.R. 8; Hyundai's Questionnaire Response May 30, 2018 at B-8 to B-9 and C-10 to C-11, P.R. 83-84, C.R. 131-132. Commerce also requested Hyundai specifically report specification data, in the SPECGRADEH/U field, for products sold in the home and United States markets, in sections B and C of its antidumping questionnaire. Antidumping Questionnaire at B-4 through B-6, B-8, B-34 through B-36, and B-39, P.R. 25. The SPECGRADEH/U fields in section B and C of Commerce's initial questionnaire were identical and asked Hyundai to report the "specification/designation/type/grade of the product," referring to international standards,

---

[1] Hyundai provided numerous subfields for product code reporting, including four subfields of PRODCODH/U that apply both to home market and United States sales, PRODCOD1, Product Type, PRODCOD2, Specification, PRODCOD3, Thickness, PRODCOD4, Width, and two additional subfields that only applied to U.S. sales, PRODCOD5, Form, and PRODCOD6, Component. Hyundai's Section A Questionnaire Response March 8, 2018, at A-37 to A-38; P.R. 44, C.R. 8.

including standards set by ASTM International. Antidumping Questionnaire at B-7 and B-39, P.R. 25.

Although Commerce expected Hyundai's entries in the SPECGRADEH/U and PRODCOD2H/U fields to be identical, it noticed that a subset of the observations exhibited inconsistent entries in these two fields. Final Results, and accompanying IDM at 13-15. It determined that Hyundai reported such inconsistent observations within several, [ ], CONNUMs. Hyundai Steel Preliminary Analysis Memorandum October 3, 2018, at 5-6, P.R. 165, C.R. 328. Because of the conflicting characteristic information, Commerce determined that it could not confirm that Hyundai accurately reported control number fields for the inconsistent observations, due to the relationship between PRODCOD2U, SPECGRADEU, and Hyundai's reported CONNUMs containing the identified observations. Final Results, and accompanying IDM at 13-15. As a result, Commerce was unable to determine a CONNUM for the inconsistent observations or the other observations in the same purported CONNUMs. *Id.* For this reason, Commerce could not confidently match any of the sales in the affected U.S. CONNUMs to corresponding CONNUMs in the Korean, home market. *Id.* Accordingly, in the Preliminary Results and Final Results, Commerce relied on facts available with an adverse inference by applying the highest transaction-specific margin to all sales within the affected CONNUMs. *Id.*

As explained above, Commerce issued a supplemental questionnaire during the remand proceeding identifying with specificity the observations containing inconsistent PRODCOD2U and SPECGRADEU information. Supplemental Remand Questionnaire, R.P.R. 1, R.C.R. 1-2. Commerce explained that, of the [ ] observations of U.S. sales covered by the [ ] control numbers, [ ] observations contained the relevant discrepancy. Final Remand Results at 8, R.P.R. 20, R.C.R. 14; Supplemental Remand Questionnaire, R.P.R. 1, R.C.R. 1-2. It requested

Hyundai to "{p}rovide a detailed narrative explanation as to why the reported codes for PRODCOD2U and SPECGRADEU differ." Supplemental Remand Questionnaire, R.P.R. 1, R.C.R. 1-2; Final Remand Results at 8-9, R.P.R. 20, R.C.R. Hyundai explained that differences between SPECGRADEU and PRODCOD2U can arise because the language in Hyundai's questionnaire instructed Hyundai to report PRODCOD2U as the merchandise was sold, whereas the CONNUMU field, which Hyundai understood to relate to the SPECGRADEU field, relied on information concerning how the merchandise was produced. Final Remand Results at 9, R.P.R. 20, R.C.R. 14. With respect to the [ ] inconsistent United States sales observations, Hyundai further elaborated that a majority, [ ], involved "formed parts," and Hyundai initially reported the PRODCOD2U field for formed parts as "not applicable" because they are "intermediate automobile parts" produced and sold by Hyundai Steel's affiliate. *Id.* at 12, n.73. More specifically, the affiliate "uses only a single product code for sales of formed parts in the normal course of business," which it reported in the field PRODCOD1U and PRODCOD5U, but no other fields. *Id.* For the remaining [ ] observations, Hyundai explained that a customer had an urgent need for a specific product and existing inventory was insufficient to fulfil the order. Final Remand Results at 9, R.P.R. 20, R.C.R. 14. So, Hyundai substituted a product with a different specification for the product that the customer ordered. *Id.* Hyundai further explained that such a situation rarely occurs, but it obtained "written confirmation from its customer," under such circumstances. Final Remand Results at 12, R.P.R. 20, R.C.R. 14; Hyundai Remand Supplemental Response, R.P.R. 6, R.C.R. 3-4.

Ultimately, Commerce determined that the additional explanation Hyundai provided in response to its supplemental remand questionnaire was reasonable and consistent with record evidence. Final Remand Results at 12, R.P.R. 20, R.C.R. 14. Commerce determined that

Hyundai's explanation "provides sufficient basis as to why there was a discrepancy" for certain United States sales observations. *Id.* Further, Commerce determined that Hyundai consistently argued that it reported PRODCOD2U as sold, whereas SPECGRADEU was reported on a different basis, and Hyundai's response was necessary to clarify why the PRODCOD2U and SPECGRADEU fields did not match for every observation. *Id.* at 12-13. Commerce, accordingly, redetermined Hyundai's dumping margin without relying on facts available reducing it from 36.59 percent in the Final Results to 1.82 percent in the remand redetermination. *Id.* at 22-23.

U.S. Steel first argues that Commerce only determined not to rely on facts available because it mistakenly believed the Court required it to do so. U.S. Steel's Comments at 5-7. However, Commerce determined not to rely on facts available only after further analysis, pursuant to the Court's order. Final Remand Results at 7-14, R.P.R. 20, R.C.R. 14. Commerce did not simply determine not to rely on facts available because of the Court's order, but rather considered Hyundai's response to Commerce's supplemental questionnaire on remand, U.S. Steel's rebuttal submission, and Hyundai's reply. Final Remand Results at 7-14, R.P.R. 20, R.C.R. 14. Commerce, further, relied on Hyundai's explanation that it reported PRODCOD2U as sold and SPECGRADEU on another basis and determined that the information provided by Hyundai was necessary to clarify why the two fields did not match. *Id.* at 12. Upon analyzing the newly submitted information, Commerce determined that facts available was no longer required, based on information provided by Hyundai in its response to Commerce's supplemental remand questionnaire. *Id.* at 14.

U.S. Steel next claims that Hyundai has provided a shifting and incomplete narrative throughout the administrative review. U.S. Steel's Comments at 5-8. However, Commerce

recognized that its supplemental questionnaire on remand was the first instance where it specifically identified the deficiencies between SPECGRADEU and PRODCOD2U, resulting in adverse facts available in the Final Results and afforded Hyundai an opportunity to remedy them. Final Remand Results at 18, R.P.R. 20, R.C.R. 14. Commerce also relied on Hyundai's explanation that SPECGRADEU and PRODCOD2U differed in some instances because they are derived from different data sources. *Id.* Specifically, SPECGRADEU reflects the physical characteristics of the merchandise, whereas PRODCOD2U reflects the merchandise as sold. *Id.* Commerce also determined that Hyundai consistently has argued that both fields were reported based on different sources of information. *Id.* at 12. For these reasons, Commerce determined that U.S. Steel's argument that Hyundai's narrative shifted over time was not supported by the record, and Hyundai provided further details in its explanation as Commerce sought those details, to identify and address reporting discrepancies. *Id.* at 18.

U.S. Steel also argues that Commerce should have determined that Hyundai did not exercise its "maximum effort" and continued to apply adverse facts available. U.S. Steel's Comments at 7. Yet, Commerce determined that Hyundai "fully responded to each of the questions put forth in Commerce's remand supplemental questionnaire." Final Remand Results at 18-19, R.P.R. 20, R.C.R. 14. Moreover, Commerce properly considered the information on the record, including the new information submitted, on remand, by both Hyundai and U.S. Steel. Final Remand Results at 7-14, R.P.R. 20, R.C.R. 14. Commerce's consideration on these submissions was in line with the Court's order that Commerce should "provide Hyundai an opportunity to remediate" the deficiency identified by Commerce in its Final Results. *Hyundai*, 518 F. Supp. 3d at 1333. Because the Court held that Commerce's reliance on its facts available findings in the investigation were unpersuasive and ordered Commerce to "provide Hyundai an

opportunity to remediate {the deficiencies}," *id.* at 1327, 1333, Commerce determined that it was necessary to permit parties to submit new information, and Commerce's reconsideration of its facts available determination led to the reasonable and supported conclusion that facts available were no longer required. Thus, Commerce has complied with the Court's order.

U.S. Steel also contends that Hyundai misled the Court by asserting that the discrepant information in the SPECGRADEU and PRODCODU fields was due to further manufacturing. U.S. Steel's Comments at 7. Although the Court in *Hyundai* references further manufacturing in the United States as a reason why specification data for products "as sold" and "as produced" did not always match, it noted that this explanation was an "example" of why there may be a discrepancy between the SPECGRADEU and PRODCOD2U fields. *Hyundai*, 518 F. Supp. 3d at 1317. The Court did not find that further manufacturing was the only explanation for discrepancies, and Hyundai's opportunity to remedy the deficiencies, identified by Commerce on remand, has provided further clarification indicating that this was not the only reason for inconsistent specification information.

U.S. Steel also alleges that Commerce should be "concerned" that Hyundai is miscoding its sales because its SPECGRADEU data does not properly align with its CONNUM reporting. U.S. Steel's Comments at 8. Although the discrepancies regarding the SPECGRADEU and PRODCOD2U fields continue to exist, Hyundai has provided sufficient explanation allowing Commerce to understand why it reported each field on a different basis. Final Remand Results at 7-14, R.P.R. 20, R.C.R. 14. Commerce considered all information submitted by the parties on remand and determined that it no longer needs to rely on facts available, for either the [ ▉ ] observations in the affected [ ▉ ] CONNUMs or the [ ▉ ] observations with inconsistent specifications, to determine a margin for Hyundai. Final Remand Results at 7-14, R.P.R. 20,

R.C.R. 14.  Accordingly, Commerce's determination to accept Hyundai's CONNUM coding as reported complies with the Court order, is based on substantial evidence, and is in accordance with law.

**CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

/s/Kelly A. Krystyniak
Kelly A. Krystyniak
Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0163

Of Counsel:

BRENDAN S. SASLOW
Attorney
Office of the Chief Counsel
    for Trade Enforcement and Compliance
United States Department of Commerce

November 8, 2021

Attorneys for Defendant United States

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains 4121 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

            <u>s/ Kelly A. Krystyniak</u>